IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| William L. McMillan, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.: 4:08-01728-TLW |
| ) | |
| Pee Dee Regional Airport Commission, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

# ORDER

The plaintiff, William L. McMillan, ("plaintiff"), filed this action in the Court of Common Pleas for Florence County, South Carolina, on March 19, 2008. The action was removed to federal court on April 25, 2008. (Doc. # 1). The matter is now before the Court for resolution of the Motion for Summary Judgment filed by the defendant, Pee Dee Regional Airport Commission[1], ("defendant"), on April 3, 2009. (Doc. # 17). The plaintiff filed a response in opposition on April 14, 2009. (Doc. # 18). This Court held a hearing on the matter on November 13, 2009. At the hearing, this Court instructed the parties that the matter would be taken under advisement, and both parties were given 15 days to submit any additional memoranda in support of their position. On December 3, 2009, the defendant filed a supplemental memorandum in support of its motion for summary judgment. (Doc. # 32). The Court has carefully considered the motions, memoranda, and exhibits submitted by the parties, as well as the arguments presented at the hearing. The Court has

---

[1] The defendant refers to itself as the "Pee Dee Regional Airport Authority."

determined the relevant facts from the record presented by the parties, and drawn all reasonable factual inferences in favor of the non-moving party.

## FACTS

This suit concerns the termination of the plaintiff's employment from the Pee Dee Regional Airport. The defendant is a South Carolina Special Purpose District consisting of a nine member authority appointed from the surrounding counties. S.C. Code § 55-11-610 et seq. The Authority manages the operations of the Florence Regional Airport, and the employees of the airport are employed by the Authority. The defendant states that the employees are eligible to participate in the South Carolina Retirement System but are not state employees or county employees. The plaintiff does not challenge this assertion.

The plaintiff and Mr. Hartsell Rogers, the current Airport Director, both previously served as appointees to the first Airport Commission. When the position of Director of Operations for the Airport became available in 2001, Mr. Rogers expressed his interest in taking the position. Mr. Rogers resigned from the Board and submitted his job application. Although there was some contention among board members about hiring "an insider," with support from the plaintiff, Mr. Rogers received the position.

In 2003, the incumbent Executive Director retired and Mr. Rogers was promoted to Executive Director. Shortly thereafter, a position as Marketing Director was created in lieu of a Director of Operations. Mr. Rogers was given sole authority to hire. The plaintiff then resigned from the Board and submitted his job application. Again, there appears to have been some contention among board members concerning the hiring of a previous board member for the position. The plaintiff was selected for the job provided that he sign an employment contract. The heading of the

contract reads, "**AGREEMENT FOR AT WILL EMPLOYMENT**." (Def.'s Ex. A, Doc. # 17-4) (hereafter referred to as "the Employment Agreement."). The defendant notes that the Employment Agreement was drafted to address concerns several board members had regarding the plaintiff's potential outside job activities and potential conflicts of interest with the plaintiff's real estate activities. (Def.'s Mem. Supp. Summ. J. at p. 3, Doc. # 17-1). The Employment Agreement states that it was entered into on November 3, 2003, and the plaintiff began his employment on December 1, 2003. The Employment Agreement reads:

> **THIS AGREEMENT** is made and entered into on this 3rd day of November, 2003 by and between the Pee Dee Regional Airport Authority, hereinafter Employer, and William L. McMillan, hereinafter Employee.
>
> The parties hereto agree as follows:
>
> 1. Employer agrees to hire Employee and Employee agrees to serve as Assistant Director/Marketing Director of the Florence regional Airport.
>
> 2. Employee acknowledges and agrees that the position of Assistant Director/Marketing Director is a full time position. Employee further acknowledges and agrees that he will maintain no other business or employment inconsistent with, in conflict with, or which interferes with his responsibilities and duties as the full time Assistant Director/Marketing Director of the Florence Regional Airport.
>
> 3. Employee shall be subject to the Employment Policies of the Pee Dee Regional Airport Authority. Notwithstanding anything to the contrary in said policies, however, **Employee specifically acknowledges, consents to, and agrees that his employment by the Pee Dee Regional Airport Authority is employment at will.**
>
> **Employee acknowledges, consents to, and agrees that his employment is at the pleasure and discretion of the Airport Director. Employee acknowledges and agrees that he is employed on an at will basis and may therefore terminate his employment at any time, with or without cause or notice. Employee acknowledges also that he is employed on an at will basis and the Airport Director may therefore terminate his employment at any time, with or without cause or notice.**
>
> (Def.'s Ex. A, Doc. # 17-4)

The plaintiff notes that upon his employment, he was given a copy of the Personnel Policy which included a section titled, "**EMPLOYEE GRIEVANCE POLICY**." (Pl.'s Mem. Opp. Summ. J. at p. 1, Doc. # 18) (Def.'s Ex. B, Doc. # 17-6). The Personnel Policy was amended and adopted on August 7, 2002.

On March 14, 2007 Mr. Rogers notified the plaintiff of his termination. The plaintiff sent several letters to Mr. Rogers requesting a grievance hearing. Mr. Rogers sent the plaintiff a letter dated April 10, 2007 explaining that because the plaintiff agreed to and signed an at-will employment contract stating that the plaintiff could be fired at any time without cause or notice, the plaintiff was not entitled to a hearing before the Airport Authority or Personnel Committee.

In his Complaint, the plaintiff has sought recovery under four causes of action. The first three claims are based on a violation of the South Carolina Constitution, The United States Constitution, 42 U.S.C. § 1983, or some combination of the three. The plaintiff asserts that he possessed a property interest in his employment and that he was deprived of this property interest without prior notice or opportunity for a hearing in violation of his right to Due Process under the fourteenth Amendment to the United States Constitution and the South Carolina Constitution. The fourth cause of action is for breach of contract.

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the defendant is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As

the party seeking summary judgment, the defendant bears the initial responsibility of informing this Court of the basis for its motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This requires a defendant to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. Celotex, 477 U.S. at 323; see also Anderson, 477 U.S. at 249.

Though the defendant bears this initial responsibility, the plaintiff, as nonmoving party, must then produce "specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e); see Celotex, 477 U.S. at 317. In satisfying this burden, the plaintiff must offer more than a mere "scintilla of evidence" that a genuine issue of material fact exists, Anderson, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the plaintiff must produce evidence on which a jury could reasonably find in its favor. See Anderson, 477 U.S. at 252.

In considering the defendant's motion for summary judgment, this Court construes all facts and reasonable inferences in the light most favorable to the plaintiff as nonmoving party. See Miltier v. Beorn, 869 F.2d 848 (4th Cir. 1990). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita, 475 U.S. at 587 (1986) (internal quotations omitted).

## DISCUSSION

The linchpin of the plaintiff's first three causes of action is the alleged deprivation of the plaintiff's property interest in his employment through the denial of his rights to procedural due process. It is noted that, "[t]he requirements of procedural due process apply only to the deprivation

of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents v. Roth, 408 U.S. 564, 569 (1972). When protected interests are at issue, the right to some kind of hearing is paramount. Id. at 569-70. In addition, the nature of the interest at stake is assessed to determine whether due process requirements apply. Id. at 570-71.

Crucial to the plaintiff's argument is his presupposition that he accrued a property interest in his employment. The Fourth Circuit Court of Appeals has stated, "In order to be accorded the protection of the due process clause, the complaining party must have a liberty or property interest within the meaning of the Fourteenth Amendment." Bunting v. City of Columbia, 639 F.2d 1090, 1093 (4th Cir. 1981) (citing Roth, 408 U.S. at 569-70). It is further noted, "A property interest exists when one has a legitimate claim of entitlement to a right arising from such sources as state statutes, local ordinances, and employment contracts." Id. An individual's abstract need or desire or unilateral expectation is insufficient to create an entitlement. Sabet v. Eastern Virginia Medical Authority, 775 F.2d 1266, 1269 (4th Cir. 1985) (citing Leis v. Flynt, 439 U.S. 438, 442 (1979)); Roth 408 U.S. at 577.

To determine whether the plaintiff has a property interest in his employment, this Court is instructed to first make its determination by reference to state law. Bishop v. Wood, 426 U.S. 341, 344 (1976). In addition, the Fourth Circuit held that, "state law rules and understandings must provide a 'sufficient expectancy of continued employment.'" Jenkins v. Weatherholtz, 909 F.2d 105, 107 (4th Cir. 1990) (citing Wood 426 U.S. at 344).

The defendant argues that state statutory law does not provide the plaintiff with a claim of entitlement. The State Employee's Grievance Procedure Act explicitly excludes special purpose districts from its definition of "Agency." S.C. Code § 8-17-320(1). This Act limits its application

to only those entities defined as Agencies under the Act. S.C. Code § 8-17-330. ("Each agency shall establish an agency employee grievance procedure . . . .") Furthermore, the defendant is not subject to the grievance procedures set forth under the County Municipal Employee's Grievance Procedure Act since the airport is not a County or an unincorporated municipality. S.C. Code § 8-17-110 et seq. Even if this latter act were to apply, S.C. Code § 8-17-120 uses language which indicates that the adoption of a grievance procedure is discretionary. The plaintiff neither cites nor references any statute, ordinance, or caselaw that creates some permanency in the plaintiff's previous position or that specifically requires the implementation of a grievance procedure. Therefore, any property interest claimed by the plaintiff in his previous employment must result from some form of employment contract.

Certain caselaw is relevant to the analysis of this issue. The court in Jenkins stated that a "government employee serving 'at the will and pleasure' of the government employer has no legitimate expectancy of continued employment and thus has no protectible property interest." Jenkins v. Weatherholtz, 909 F.2d at 107 (citations omitted). Therefore, if the plaintiff's employment was at-will, then the plaintiff was not deprived of a protected property interest. See McBride v. City of Roanoke Redevelopment and Housing Authority 871 F.Supp. 885, 889 (W.D.Va.1994).

The plaintiff further argues that the Personnel Policy contains language which contradicts that found in the Employment Agreement. He states that the Policy contains a mandatory "grievance procedure." The plaintiff then points to the specific reference to the Personnel Policy found in the Employment Agreement. According to the plaintiff, as the non-drafting party, this ambiguity should be resolved in favor of the plaintiff. Therefore, the plaintiff asserts that he is entitled to a grievance procedure.

South Carolina caselaw directly addresses the issue of at-will employment. It is axiomatic that South Carolina is an at-will employment state. The caselaw makes clear that at-will employment permits the employer to fire an employee for "good reason, no reason, or even a bad reason." <u>Culler v. Blue Ridge Co-op.</u>, 422 S.E.2d 91, 92 (S.C. 1992); <u>See also</u> <u>Hessenthaler v. Tri-County Sister Help, Inc.</u>, 616 S.E.2d 694, 697 (S.C., 2005) ("In general, an at-will employee may be terminated at any time for any reason or for no reason, with or without cause."). Therefore, employment without any agreement to the contrary is at-will. However, the principle that a handbook policy or personnel policy may alter the at-will employment status is just as well-established. "[W]here the at-will status of the employee is altered by the terms of an employee handbook, an employer's discharge of an employee may give rise to a cause of action for wrongful discharge." <u>Conner v. City of Forest Acres</u>, 560 S.E.2d 606, 610 (S.C. 2002). "We hold that a jury can consider an employee handbook . . . in deciding whether the employer and employee had a limiting agreement on the employee's at-will employment status." <u>Small v. Springs Industries, Inc.</u>, 357 S.E.2d 452, 455 (S.C. 1987).

<u>Straub v. County of Greenville, South Carolina</u>, 2006 WL 1073883 (D.S.C. 2006) provides a thorough analysis of how an employee handbook may alter an employee's at-will employment status under South Carolina case law. In <u>Straub</u>, the plaintiff was hired by Greenville County as an EMS paramedic. <u>Id.</u> at *1. Sometime after his employment began, the County adopted a new random drug testing policy for employees working in safety sensitive positions. Employees whose drug tests are certified as positive by a medical review officer are terminated, and the County interpreted the policy to prohibit an employee from utilizing the County's grievance procedure. <u>Id.</u> at *2. During a random drug test, Straub tested positive for THC, the active ingredient in marijuana. He was

immediately suspended, and after the drug test was certified, Straub was terminated and denied a grievance hearing. Id.

Straub alleged a procedural due process violation. Id. at *5. He argued that the County's employee handbook created a property interest in continued employment because it included a section which provided for a grievance committee and various disciplinary measures that could be implemented. Id.

The court in Straub cited to Small v. Springs Industries, Inc. for the proposition that if an employer wishes to issue policies in a handbook that are purely advisory statements, without altering the at-will employment status of the employee, then the employer should include a conspicuous disclaimer or provision in the document. Id. at *7; Springs, 357 S.E.2d at 455. The court in Straub next cited to Hessenthaler v. Tri-County Sister Help, Inc., where the South Carolina Supreme Court explained that if a handbook contains both disclaimers and promises, or mandatory, progressive disciplinary procedures, then it is for a jury to determine the existence of an employment contract. Id.; Hessenthaler at 697-98. See also Conner v. City of Forest Acres, 560 S.E.2d at 610.

The court concluded that the handbook contained disclaimers that were conspicuous as a matter of law. Id. Disclaimers could be found throughout the handbook as well as on the first page. Id. at *6. Additionally, the court held that the handbook did not contain any mandatory disciplinary procedures. Id. at *7. Therefore, the court concluded that because Straub was an at-will employee and the handbook did not alter that relationship, Straub had no property interest in his continued employment. Id.

The Court has reviewed the Pee Dee Regional Airport Authority Personnel Policy. The Personnel Policy includes a section heading, written in bold and all capital letters, titled "Employee Grievance Policy." Under this heading, it reads:

> It is the policy of the Authority to honor the rights and privileges of all employees and give careful consideration and attention to their complaints of any nature. In accordance with this belief, the following grievance procedure has been established . . .
>
> (Def.'s Ex. C, Doc. # 17-6)

The policy explains that the dissatisfied employee must immediately take his grievance in writing to his immediate supervisor. The issue then moves from the supervisor to the Executive Director to the Personnel Committee of the Airport Authority and then to the full Authority, assuming that the employee is unsatisfied with the decision reached at each review. Id. There is no language in the Personnel Policy before this Court that is a conspicuous disclaimer nor is there any indication that the policy is precatory or permissive. Even so, the "Agreement for At Will Employment" states, "Notwithstanding anything to the contrary in said policies," the employment is at-will.

As stated, notably, this Court concludes that a review of the employment contract entered by and between the plaintiff and the Airport Authority leads to a clear determination that the plaintiff's employment was at-will. Under the heading, "Agreement for At Will Employment," which is written in bold and all capital letters, the relevant language of the contract reads:

> 3. Employee shall be subject to the Employment Policies of the Pee Dee Regional Airport Authority. Notwithstanding anything to the contrary in said policies, however, **Employee Specifically acknowledges, consents to, and agrees that his employment by the Pee Dee regional Airport Authority is employment at will.**
>
> **Employee acknowledges, consents to, and agrees that his employment is at the pleasure and discretion of the Airport Director. Employee acknowledges and agrees that he is employed on an at will basis and may therefore terminate his**

**employment at any time, with or without cause or notice. Employee acknowledges also that he is employed on an at will basis and the Airport Director may therefore terminate his employment at any time, with or without cause or notice.**

(Def.'s Ex. A, Doc. # 17-4).

The plaintiff contends that because the Employment Agreement states that the employee is subject to the Employment Policies of the Airport Authority, there is an ambiguity in the contract concerning his right to the grievance procedure provided for in the Personnel Policy. The Court disagrees. The relevant language is clear and straightforward. It reads, "Notwithstanding anything to the contrary in said policies, employee . . . agrees that his employment . . . is employment at will." The contract provides that the plaintiff was to be an at-will employee irrespective of any language present in the Personnel Policy and that the contract is the controlling document concerning the plaintiff's employment status. There is no ambiguity in the language of the Employment Agreement.

As previously mentioned, the default status of an employee in South Carolina is at-will. The numerous South Carolina cases addressing breach of contract actions based on employee handbooks focus on the alteration of this default, at-will employment status by the existence of handbook policies that run contrary to the notion of at-will employment. The case at hand is distinguishable from the fact patterns in those cases, because here, the parties entered an "Agreement for At Will Employment" for the purpose of creating an at-will employment arrangement. The "Employment Agreement" explicitly provides that the plaintiff has no protection under the Employment Policies of the Pee Dee Regional Airport Authority if there is anything contrary in said policies to his at-will employment status.

The decision reached by the South Carolina Supreme Court in <u>Small v. Springs Industries, Inc.</u> laid the foundation for South Carolina law of handbooks and employment contracts. In <u>Springs</u>, the Court explained that the employment agreement before the court, like most employment agreements, was a unilateral agreement. <u>Springs</u>, 357 S.E.2d at 454. There was a promise to hire in return for wages, which was accepted by performance. <u>Id.</u> The court found that as a unilateral contract, the employer was precluded from arguing that the handbook could not have established an employment contract for lack of mutual assent between the parties, lack of the necessary elements of a contract, and lack of reciprocal duties and obligations. <u>Id.</u> The court held that the trial court correctly determined that the issue of existence of a contract was for the jury. <u>Id.</u> at 454

The plaintiff's case is distinguishable. In the case at hand, the plaintiff entered into a written bilateral contract for employment with his employer. The Employment Agreement consisted of the plaintiff's agreement to serve as Assistant Director/Marketing Director, to maintain no other business in conflict with his duties under this position, and to agree that his employment is at-will. In exchange, the employer agreed to hire the plaintiff. In contrast with <u>Springs</u>, here, the plaintiff bargained for and assented to the limitation of his employment to an at-will status.

The equitable and social policy reasons stated by the court in <u>Springs</u> are not at issue in the case at hand. In <u>Springs</u>, the Court noted the inequity that would result if an employer were to publish "potentially misleading personnel manuals while reserving the right to deviate from them at their own caprice." <u>Id.</u> As stated, this Court concludes that under the contract for employment at-will, the plaintiff relinquished his rights to any employment procedures when he agreed to accept a position as an at-will employee.

In its review, this Court found no South Carolina cases directly on point where the employer and employee entered a specific contractual agreement for employment at-will with the concurrent existence of a handbook that provided procedural rights to the employee. However, one case involves the review of a trial court's decision of this issue. In <u>Horton v. Darby Electric Co., Inc.</u>, a case involving a non-compete clause, the trial court determined that it was not facing the traditional handbook case because there existed an "independent agreement governing appellant's employment." <u>Horton v. Darby Electric Co.</u>, 599 S.E.2d 456, 459. The trial court granted summary judgment in favor of the employer. The Supreme Court of South Carolina, however, determined that the referenced agreement did not state that the appellant could be terminated "for any reason," and hence, summary judgment was not appropriate "on this point." <u>Id.</u> In <u>Horton</u>, the court concluded the policy manual did not alter the at-will relationship between the employee and the employer.

In summary, this Court finds that the case at hand is distinguishable from the line of handbook cases decided by the South Carolina Supreme Court discussed herein. This Court concludes as a matter of law that the plaintiff was an employee at-will and had no property interest in continued employment. Therefore, the due process clause has not been implicated by the presence of any property interest. Hence, the defendant's summary judgment motion is granted as to the plaintiff's first three causes of action.

As to the plaintiff's fourth cause of action, this Court first notes that it has jurisdiction to adjudicate this claim under 28 U.S.C. 1367(a) and chooses to exercise said jurisdiction. This Court holds that its previous determination that the plaintiff was an at-will employee precludes an assertion of breach of contract predicated upon an alleged agreement of employment beyond at-will. For the reasons discussed herein, there existed no binding contract of employment which gave the plaintiff

any interest in his employment beyond at-will. The employment contract ensured the plaintiff's status as an at-will employee. As discussed previously, an employer may fire an at-will employee at any time for any reason or for no reason, with or without cause. Hessenthaler v. Tri-County Sister Help, Inc., 616 S.E.2d 694, 697 (S.C., 2005). Therefore, the defendant's motion for summary judgment is granted as to the plaintiff's fourth cause of action.

In conclusion, the record reflects that the plaintiff entered into a valid employment contract where he accepted the position as Assistant Director/Marketing Director. The agreement was an "Agreement for at will Employment." The plaintiff, in the agreement, "specifically acknowledges, consents to, and agrees that his employment . . . is employment at will." He further "acknowledges, consents to, and agrees that his employment is at the pleasure and discretion of the Airport Director. Employee acknowledges and agrees that he is employed on an at will basis and may therefore terminate his employment at any time, with or without cause or notice. Employee acknowledges also that he is employed on an at will basis and the Airport Director may therefore terminate his employment at any time, with or without cause or notice." This language applies, "Notwithstanding anything to the contrary" in the Employment Policies of the Pee Dee Regional Airport authority. The agreement language is clear and direct. There is no ambiguity. The plaintiff agreed he was an at-will employee. He is bound by what he agreed to in the at-will employment contract.

## CONCLUSION

For the reasons set forth herein, the defendant's motion for summary judgment is **GRANTED** as to all claims. (Doc. # 17).

**IT IS SO ORDERED**.

s/Terry L. Wooten  
TERRY L. WOOTEN  
United States District Judge

February 18, 2010  
Florence, South Carolina